IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2016 SEP -2  P 12: 25

CLERK'S OFFICE
AT GREENBELT

BY_____DEPUTY

|  |  |  |
|---|---|---|
| TRUSTEES OF THE BRICKLAYERS LOCAL 1 OF MD, VA AND DC HEALTH AND WELFARE FUND, *et al.*, | * | |
| | * | |
| Plaintiffs, | * | Case No.: GJH-15-3238 |
| | * | |
| v. | * | |
| | * | |
| WW REID MASONRY, LLC., | * | |
| | * | |
| Defendant. | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Pursuant to Fed. R. Civ. P. 55(b), Bricklayers Local 1 of MD, VA and DC Health and Welfare Fund; Trustees of the Marble, Tile and Terrazzo Workers Individual Account Fund; Trustees of the Bricklayers Local 1 Apprenticeship and Training Fund; Trustees of the Bricklayers and Allied Craftsman Local #1 of Maryland Pension Fund[1]; Bricklayers and Trowel Trades Pension Fund ("IPF"); International Masonry Institute ("IMI"); the Masonry, Stone, Marble, Tile and Terrazzo Communication Preservation and Productivity Fund ("CPP Fund"); Bricklayers Local 1 of MD, VA and DC Prevailing Wage and Industry Compliance Trust Fund ("Compliance Fund") and Bricklayers and Allied Craftworkers Local #1 of MD, VA & DC ("Local 1") (collectively, "Plaintiffs") have filed a Motion for Default Judgment, with supporting declarations and exhibits, against Defendant WW Reid Masonry LLC. ECF No. 6. No hearing is necessary to resolve the Motion. *See* Loc. R. 105.6 (D. Md. 2016). For the reasons that follow, Plaintiffs' Motion is granted.

---

[1] Plaintiffs refer to this fund as the "Baltimore Bricklayers Pension Fund" but the attached trust agreement refers to the "Bricklayers and Allied Craftsman Local #1 of Maryland Pension Fund." ECF No. 6-8.

## I.      BACKGROUND

Six of the Plaintiffs are multiemployer employee benefit plans as those terms are defined

in the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1002(1), (3), and

(37): Bricklayers Local 1 of MD, VA and DC Health and Welfare Fund; Trustees of the Marble,

Tile and Terrazzo Workers Individual Account Fund; Trustees of the Bricklayers Local 1

Apprenticeship and Training Fund; Trustees of the Bricklayers and Allied Craftsman Local #1 of

Maryland Pension Fund, (hereinafter referred to collectively as "Local Funds"); IPF and IMI.

ECF No. 1 ¶¶ 1-3. These Plaintiffs are trustees of their respective funds, in accordance with each

fund's trust agreement, and are fiduciaries as defined under ERISA, 29 U.S.C. § 1002(21). *Id.*

Two plaintiffs, the CPP Fund and the Compliance Fund, are labor-management

cooperation committees as that term is defined in the Taft-Hartley Act, 29 U.S.C. § 186(c)(9),

and the Labor-Management Cooperation Act, 29 U.S.C. § 175a. *Id.* ¶¶ 4-5. Each fund's Board of

Trustees is a designated fiduciary in accordance with each fund's respective trust agreement. *Id.*

The final Plaintiff, Local 1, is a labor organization as that term is defined in the Labor-

Management Relations Act ("LMRA"), 29 U.S.C. § 152(5). *Id.* ¶ 6.

Defendant is a Maryland corporation with offices located in Glenwood, Maryland. *Id.* ¶

7. Defendant is an employer in an industry affecting commerce as defined by ERISA, 29 U.S.C.

§ 1002(5), 11 and (12), and the Labor-Management Relations Act, 29 U.S.C. § 152(2). *Id.*

Plaintiffs allege that Defendant entered into a collective bargaining agreement with Local

1, which also bound it to the agreements and declarations of trust establishing the Local Funds,

IMI, IPF, the Compliance Fund and the CPP Fund (together the "Benefits Funds"). ECF No. 1 ¶

11. Pursuant to said agreements, Defendant is required to submit monthly reports regarding the

hours worked by its employees. *Id.* ¶ 13; *see also* ECF No. 6-3 ¶ 5. Defendant is further required

to make monthly contributions to the Benefit Funds along with monthly dues payments to Local

2

1 based on the number of hours worked by Defendant's employees. *Id.* ¶ 14; *see also* ECF No. 6-3 ¶ 6.

According to Plaintiffs, at various times between November 2013 and January 2016, Defendant 1) submitted monthly reports but failed to make complete contributions and due payments to the Benefit Funds and Local 1 respectively; 2) failed to submit monthly reports or make any type of payment; and 3) made late payments to the Benefit Funds and Local 1. ECF No. 1 ¶¶ 15- 16, 19-20; *see also* ECF No. 6-3 ¶¶ 7-11. [2]

Pursuant to the above referenced agreements, when an employer fails to submit the required reports and payments, the trustees may estimate the amount owed on the basis of prior reports or payments. ECF No. 1 ¶ 17. In addition, the agreements provide for liquidated damages and interest payments on any late payments, each calculated at varying interest rates based on the fund at issue. ECF No. 1 ¶¶ 21, 23. Furthermore, in order to determine the accuracy of contributions to the Benefit Funds, the trustees are authorized to conduct an audit of Defendant's payroll and wage records. ECF No. 1 ¶ 27; *see also* ECF No. 6-3 ¶ 14.

Plaintiffs initiated the present action on October 22, 2015. ECF No. 1. In Count I of their Complaint, Plaintiffs alleged that Defendant had "fail[ed] to remit contributions and dues check-off as contractually required and to pay liquidated damages and interest for delinquent contributions...in contravention of the Local 1 Collective Bargaining Agreement, Agreements and Declaration of Trust establishing the various Benefit Funds and Sections 502 and 515 of ERISA [29 U.S.C. §§ 1132 and 1145]." ECF No. 1 ¶ 24. Plaintiffs sought a judgment in the

---

[2] Specifically, Plaintiffs allege that Defendant submitted monthly reports but failed to make complete contributions and dues payments during April 2014, May 2014, July 2014 – October 2014 and December 2014. ECF No. 6-3 ¶ 7. For the months of April 2014, May 2014, October 2014 – December 2014, April 2015 and May 2015 Plaintiffs received certified copies of payroll statements from Defendant's general contractor regarding work performed but Defendant did not make any payments. *Id.* ¶ 8. Defendant also failed to submit monthly reports or make payments of any type for additional work during the period of January 2015 – March 2015 and June 2015 - January 2016. *Id.* at ¶ 9. Additionally, Defendant's contributions to the Local Funds for the months of November 2013, December 2013, May 2014, August 2014 and September 2014 were paid late. *Id.* ¶ 10.

amount of $6,591.99 in unpaid contributions and dues, $2,067.23 in liquidated damages and interest assessed on the late contributions, plus costs and reasonable attorneys' fees. ECF No. 1 ¶ 25(A-B). Plaintiff additionally requested relief in the form of "all contributions and liquidated damages which become due subsequent to the filing of this action through the date of judgment..." *Id.* ¶ 25(C).

In Count II of their Complaint, Plaintiffs requested that the Court enforce the terms of their collective bargaining agreement by ordering an audit of Defendant's wage and payroll records for January 1, 2013 through the date of the audit. *Id.* at ¶ 30(A). They further requested judgment against the Defendant for the sum determined in the audit, plus liquidated damages, interest, costs, attorneys' fees and any expenses incurred during the audit. *Id.* ¶ 30(B-C).

The time for Defendant to respond to Plaintiffs' Complaint expired on December 26, 2015. *See* ECF No. 5-1; Fed. R. Civ. P. 12(a)(1)(A)(i). On February 26, 2016, Plaintiffs filed a Motion for Clerk's Entry of Default, ECF No. 5, and the presently pending Motion for Default Judgment. ECF No. 6. An Order of Default was entered by the Clerk of the Court against Defendant on March 21, 2016. ECF No. 7.

In Plaintiffs' Motion for Default Judgment, Plaintiffs indicate that, since the initiation of the present action, Defendant has continued to fail to submit reports or make contributions to the Benefit Funds and Local 1 as required under its collective bargaining agreement. *See* ECF No. 6-3 ¶ 9.

## II.    STANDARD OF REVIEW

"A defendant's default does not automatically entitle the plaintiff to entry of a default judgment; rather, that decision is left to the discretion of the court." *Choice Hotels Intern., Inc. v. Savannah Shakti Carp.*, No. DKC-11-0438, 2011 WL 5118328 at * 2 (D. Md. Oct. 25, 2011) (citing *Dow v. Jones*, 232 F.Supp.2d 491, 494 (D. Md. 2002)). Although "[t]he Fourth Circuit

4

has a 'strong policy' that 'cases be decided on their merits,'" *id.* (citing *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir.1993)), "default judgment may be appropriate when the adversary process has been halted because of an essentially unresponsive party[.]" *Id.* (citing *S.E.C. v. Lawbaugh*, 359 F.Supp.2d 418, 421 (D. Md. 2005)).

"Upon default, the well-pled allegations in a complaint as to liability are taken as true, although the allegations as to damages are not." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 422 (D. Md. 2005). Rule 54(c) of the Federal Rules of Civil Procedure limits the type of judgment that may be entered based on a party's default: "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." In entering default judgment, a court cannot, therefore, award additional damages "because the defendant could not reasonably have expected that his damages would exceed th[e] amount [plead in the complaint]." *In re Genesys Data Techs., Inc.*, 204 F.3d 124, 132 (4th Cir. 2000). Where a complaint does not specify an amount, "the court is required to make an independent determination of the sum to be awarded." *Adkins v. Teseo*, 180 F.Supp.2d 15, 17 (D.D.C. 2001) (citing *S.E.C. v. Management Dynamics, Inc.*, 515 F.2d 801, 814 (2nd Cir. 1975); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2nd Cir. 1981)). While the Court may hold a hearing to prove damages, it is not required to do so; it may rely instead on "detailed affidavits or documentary evidence to determine the appropriate sum." *Adkins*, 180 F.Supp.2d at 17 (citing *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)); *see also Laborers' District Council Pension, et al. v. E.G.S., Inc.*, No. WDQ–09–3174, 2010 WL 1568595, at *3 (D. Md. Apr.16, 2010) ("[O]n default judgment, the Court may only award damages without a hearing if the record supports the damages requested.").

III.    **DISCUSSION**

    **A. Liability**

        **1.  Count 1: ERISA Claims and Breach of Collective Bargaining Agreement**

In considering a Motion for Default Judgment, the Court accepts as true the well-pleaded factual allegations in the Complaint as to liability, but nevertheless "must determine whether [those] allegations . . . support the relief sought in th[e] action." *Int'l Painters & Allied Trades Indus. Pension Fund v. Capital Restoration & Painting Co.*, 919 F. Supp. 2d 680, 685 (D. Md. 2013) (citation and internal quotation marks omitted). In their Complaint, Plaintiffs allege violations of ERISA, the collective bargaining agreement and the underlying trust agreements together under Count I without indicating which cause of action relates to each individual Plaintiff. ECF No. 1 ¶ 24. Since Plaintiffs allege that the Local Funds, IPF and IMI are multiemployer benefit funds as defined under ERISA, the Court will interpret claims as to those Plaintiffs as violations of ERISA. In addition, since Plaintiffs allege that the CPP Fund and the Compliance Funds are labor-management cooperation committees, and that Local 1 is a labor organization, the Court will construe the claims as to those Plaintiffs as violations of the collective bargaining agreement under LMRA, 29 U.S.C. § 185(a). *See Trustees of the Plumbers & Gasfitters Local 5 Ret. Sav. Fund v. Phenix Plumbing, Inc.*, No. CV TDC-15-2299, 2016 WL 3461191, at *2 (D. Md. June 21, 2016) (construing allegations regarding failure to pay funds to a labor management cooperation committee and dues to a labor organization, as required by a collective bargaining agreement, as an action for breach of a collective bargaining agreement under LMRA, 29 U.S.C. § 185(a)).

        **i.  ERISA Claims**

In the Complaint, the Local Funds, IPF and IMI allege that, in contravention of their respective trust agreements, Defendant 1) failed to make complete contributions owed to the

funds, 2) failed to submit monthly reports or make any type of payment to the funds and 3) made payments to the funds late in contravention of the requirements of their respective trust agreements. ECF No. 1 ¶¶ 15-16, 19-20.

ERISA states that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145; *see also* 29 U.S.C. § 1132(g) (providing that employers who fail to timely make contributions are liable in a civil action for, inter alia, unpaid contributions, interest on the unpaid contributions, liquidated damages, reasonable attorneys' fees, and costs of the action). ERISA therefore "'provide[s] trustees of multiemployer benefit plans with an effective federal remedy to collect delinquent contributions.'" *Int'l Painters,* 919 F. Supp. 2d at 685–86 (quoting *Laborers Health & Welfare Trust Fund for Northern Cal. v. Advanced Lightweight Concrete Co., 484 U.S. 539,* 541 (1988)). Thus, assuming the truth of the well-pleaded allegations in the Complaint, Plaintiffs have established Defendant's liability for failure to pay the contributions required under the collective bargaining agreement and trust agreements.

## ii.  Breach of Collective Bargaining Agreement

Similarly, the CPP Fund, the Compliance Fund and Local 1 claim the Defendant breached their collective bargaining agreement under § 301 of the LMRA, 29 U.S.C. § 185(a). The LMRA "authorize[s] parties to enforce the provisions of their collective bargaining agreements." *Trustees of the Nat. Asbestos Workers Pension Fund v. Ideal Insulation Inc.,* No. CIV. ELH-11-832, 2011 WL 5151067, at *3 (D. Md. Oct. 27, 2011). The Complaint, taken as true, establishes that Defendant was obligated by the terms of the collective bargaining agreement to submit monthly reports regarding the hours worked by its employees and to make

7

monthly contributions to the CPP Fund and the Compliance Fund along with monthly dues payments to Local 1 based on the number of hours worked by Defendant's employees. ECF No. 1 ¶¶ 13-14. The Complaint and the Affidavit attached to the Motion for Default Judgment further establish that, in violation of the agreement, Defendant variously failed to make the required contributions, made untimely contributions and failed to provide the necessary monthly reports. ECF No. 1 ¶¶ 15-16, 19-20; *see also* ECF No. 6-3 ¶¶ 7-11. This failure by Defendant is thus a breach of the collective bargaining agreement and Defendant is liable to the CPP Fund, the Compliance Fund and Local 1 for unpaid contributions and dues, along with any additional damages per the terms of the collective bargaining agreement.

### B. Relief

#### 1. Damages

Plaintiffs now seek damages under ERISA, 29 U.S.C. § 1132(g)(2), their collective bargaining agreement and respective trust agreements. "When a plaintiff prevails in an ERISA action to enforce the payment of delinquent contributions due to an employee benefit plan, the court *shall* award the plan: (A) the unpaid contributions, (B) interest on the unpaid contributions, (C) an amount equal to the greater of—(i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A), (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and (E) such other legal or equitable relief as the court deems appropriate." *Bd. of Trustees of Operating Engineers Local 37 Ben. Fund v. Fraternal Order of Eagles Cumberland No. 245*, No. WDQ-09-3123, 2010 WL 4806975, at *3 (D. Md. Nov. 18, 2010)(emphasis in original).

The Court is, of course, limited in the amount of damages it may award in a default

judgment by Rule 54(c). Under that rule, the award may not "differ in kind from, or exceed in

amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Although the damages sought

in Plaintiffs' Motion for Default Judgment differ in dollar amount than those sought in Plaintiffs'

Complaint, this Court recently recognized:

> Where a complaint demands a specific amount of damages *and* unspecified
> additional amounts, . . . so long as a defendant has notice that additional
> unspecified damages may be awarded if the case proceeds to judgment, general
> allegations in the complaint may suffice to support default judgment in an amount
> that is proven, either by way of exhibits, affidavits, and other documentation in
> support of a motion for default judgment, or at a hearing.

*Tr. of the Nat'l Automatic Sprinkler Indus. Welfare Fund v. Harvey*, No. GJH-15-521, 2016 WL

297425, at *5 (D. Md. Jan. 21, 2016) (emphasis in original). Indeed, "the purpose of Rule 54(c)'s

prohibition on damages that 'exceed in amount' or 'differ in kind' from that sought in the

complaint is to allow the defendant to be able to 'decide on the basis of the relief requested in the

original pleading whether to expend the time, effort, and money necessary to defend the action.'"

*Id.* (quoting 10 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2663

(3d ed. 1998)). Thus, Rule 56(c) "does not preclude an award of damages that accrued during the

pendency of the action [where] such damages were explicitly requested in the complaint, and

sufficiently established by the affidavits submitted by plaintiffs." *Id.* (quoting *Ames v. STAT Fire

Suppression, Inc.*, 227 F.R.D. 361, 362 (E.D.N.Y. 2005)). In those circumstances, a defendant is

"put on notice that [the] plaintiff was seeking such damages when defendant was served with the

complaint" and "[t]hat notice was renewed when defendant was served with [the plaintiff's]

motion for default judgment . . . ." *Id.* (quoting *Ames*, 227 F.R.D. at 362).

Here, Plaintiffs now seek judgment against Defendant in an amount totaling $76,950.65,

broken down as follows: $62,224.48 in contributions owed for the period between April 2014

9

and January 2016 (ECF No. 6-3 ¶¶7-9); $11,833.91 in liquidated damages assessed on late

contributions for the period between November 2013 and December 2015, computed at varying

rates per the terms of the respective trust agreements but not exceeding 20% (ECF No. 6-3 ¶ 13);

and $2,892.27 in interest computed at varying rates per the terms of the respective trust

agreements but not exceeding 18% (*Id.*). While Plaintiffs only demanded $6,591.99 in unpaid

contributions and $1,938.13 in liquidated damages in the Complaint, ECF No. 1 ¶ 25 (A–B),

they also sought contributions and liquidated damages "which become due subsequent to the

filing of this action through the date of judgment, plus costs, interest, and reasonable attorneys'

fees, pursuant to the various Agreements and Declarations of Trust and 29 U.S.C. § 1132(g)." *Id.*

¶ 25(C). Defendant, accordingly, had notice at the time the Complaint was filed that failure to

defend the action could result in a judgment in excess of the specific dollar figure stated in the

Complaint and had notice as to what those damages would include. Defendant also received

notice of the specific amounts Plaintiffs sought to recover in default judgment when they were

served with copies of Plaintiffs' Motion for Default Judgment on February 26, 2016. ECF No. 6-

17. Accordingly, "[t]he damages sought by Plaintiffs in their Motion for Default Judgment do

not 'differ in kind' [from] or 'exceed in amount' that plead for in the Complaint; rather under the

plain language of that provision, the damages Plaintiffs request in their Motion are precisely the

damages plead for in the Complaint, notwithstanding that the total amount of those damages has

increased since the time this action was initiated." *Harvey*, 2016 WL 297425, at *6.

    In support of their request for contributions and dues owed under the collective

bargaining agreement and underlying trust agreements, Plaintiffs submit the declaration of Scott

Garvin, President of Local 1 and Trustee of several of the Plaintiff Benefit Funds. ECF No. 6-3.

    Garvin attests that Defendant has failed to make the vast majority of the required

payments for the period between April 2014 and January 2016. ECF No. 6-3 ¶¶ 7-9. Garvin also

states that for a portion of that time Defendant has failed to submit reports regarding the number of hours that Defendant's employees worked. *Id.* ¶ 9. Accordingly, the projected amount of Defendant's delinquency for the hours worked by covered employees totals $36,239.67. *Id.* Garvin further attests that for a portion of the time, Plaintiffs received copies of certified payroll for work performed and that, pursuant to the certified payroll received, Defendant owes $22,036.29. *Id.* ¶ 8. Finally, Garvin indicates that Defendant's contributions and dues for the majority of the months between November 2013 and December 2015 were paid late and thus Defendant owes $11,833.91 in liquidated damages, calculated at different rates per the respective trust agreements. *Id.* ¶¶ 10-11. Garvin's calculations are also documented in a spreadsheet specifying all of Defendant's unpaid and late contributions. ECF No. 6-13 ("Exhibit K"). The record therefore substantiates Plaintiffs' request for unpaid contributions and liquidated damages.

Plaintiffs also seek $2,892.27 in interest computed at varying rates per the terms of the respective trust agreements. ECF No. 6-3 ¶¶ 12-13; ECF No. 6-13. The interest is owed pursuant to 29 U.S.C. § 1132(g) and the trust agreements. The figures in Exhibit K correspond with the amount requested in the motion for default judgment and are otherwise supported by the record. ECF No. 6-3.

### 2.  Attorney's Fees and Costs

Attorney's fees and costs are available under ERISA, 29 USC § 1132(g)(2)(D), and under the collective bargaining agreement. ECF No. 6-1 at 3.[3] In support of their claim for attorneys' fees and costs, Plaintiffs submit the declaration of their attorney, Charles W. Gilligan, ECF No. 6-14, a spreadsheet specifying the hourly billing by Gilligan and his paralegal with respect to the

---

[3] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

instant lawsuit, ECF No. 6-15, and invoices for costs spent on process service, ECF No. 6-16.
These materials indicate that Gilligan's firm spent eighteen and a half hours on this case on
behalf of Plaintiffs, at a rate of $130 per hour for paralegal time and $230 per hour for attorney
time. ECF No.6-14 ¶¶ 3, 5; *see also* ECF No. 6-15. Gilligan further attests that he has been a
member of this Court for almost 30 years. ECF No. 6-14 ¶ 1. These rates are certainly fair
considering the local guidelines, which note that a reasonable rate for lawyers admitted to the bar
twenty or more years is between $300 and $475 a hour, and are reasonable given the multiple
Plaintiffs in the case. *See* Local Rule App. B (D. Md. 2016). Plaintiffs are therefore awarded
$2,805.00 in attorneys' fees.

The record also substantiates the following expenses: $95 for service of process and $400
for filing fees. ECF Nos. 6-14, 6-16. Thus, Plaintiffs are awarded $495.00 in costs.

### 3. Injunctive Relief

In Count II of their Complaint, Plaintiffs request that the Court enforce the terms of the
collective bargaining agreement and trust agreements by ordering Defendant to permit a
complete audit of their wage and payroll records for the period of January 1, 2013 through the
date of the audit. ECF No. 1 ¶ 30(A). Plaintiffs also request that the Court issue judgment against
the Defendant for any amount determined owed by the audit, including any liquidated damages,
interest, costs and attorneys' fees, and issue judgment against the Defendant for all expenses,
including accountant's fees, related to the audit. ECF No. 1 ¶ 30(B-C).

In conjunction with a default judgment regarding the enforcement of a collective
bargaining agreement, the Court may also order injunctive relief. *See Trustees of the Nat.
Asbestos Workers Pension Fund v. Ideal Insulation Inc.*, No. CIV. ELH-11-832, 2011 WL
5151067, at *4–5 (D. Md. Oct. 27, 2011)(citations omitted). Pursuant to the collective bargaining
agreement, the trustees have the authority to conduct an audit for the purposes of determining the

accuracy of the contributions to the funds. ECF No. 1 ¶ 27; *see also* ECF No. 6-3 ¶ 14. Injunctive relief in the form of compelling an audit is permissible in ERISA and LMRA actions. *See Trustees of the Nat. Asbestos Workers Pension Fund v. Ideal Insulation Inc.*, No. CIV. ELH-11-832, 2011 WL 5151067, at *6 (D. Md. Oct. 27, 2011)(ordering Defendant to allow Plaintiff's auditor to conduct an audit and produce any record requested by Plaintiff's auditor). Therefore, Defendant is ordered to allow Plaintiff's auditors to conduct an audit going back to January 1, 2013, and to pay all contributions shown to be due, upon affidavit from the Plaintiff, as long as such amounts are not duplicative of the amounts already granted in this order. Defendant is also ordered to pay all expenses, including accountant's fees, associated with the audit, per its collective bargaining agreement.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Default Judgment, ECF No. 6, is **GRANTED**. Judgment will be entered in favor of Plaintiffs in the amount of $80,250.66 as follows: $62,224.48 in contributions and dues owed; $11,833.91 in liquidated damages; $2,892.27 in interest assessed at interest rates ranging between 6% and 18% per the terms of the respective trust agreements; $2,805.00 in attorneys' fees and $495.00 in costs. Defendant is ordered to allow Plaintiff's auditors to conduct an audit going back to January 1, 2013, and to pay all contributions shown to be due, upon affidavit from the Plaintiff, as long as such amounts are not duplicative of the amounts already granted in this order, plus liquidated damages and interest assessed from the date of delinquency though the date of payment.

Defendant is also ordered to pay all expenses, including accountant's fees, associated with the audit, per its collective bargaining agreement. A separate Order follows.

Dated: September 2, 2016

GEORGE J. HAZEL
United States District Judge

14